UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| RAYMOND MARTINEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:18-CV-340 |
| | § | |
| MEDICAL DEPOT, INC.; dba DRIVE | § | |
| DEVILBISS HEALTHCARE, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION & ORDER

The Court now considers the "No Evidence Motion for Summary Judgment"[1] filed by Medical Depot, Inc. d/b/a Drive Devilbiss Healthcare ("Medical Depot"),[2] the response[3] filed by Raymond Martinez ("Plaintiff"), Medical Depot's reply and objections to Plaintiff's summary judgment evidence,[4] and Plaintiff's surreply.[5] The Court also considers the "Motion for Summary Judgment"[6] filed by Lincare, Inc. ("Lincare") (Medical Depot and Lincare collectively, "Defendants"), Plaintiff's response,[7] and Lincare's reply;[8] Lincare's "Unopposed Motion to Supplement Summary Judgment Evidence;"[9] Lincare's "Motion in Limine to Exclude Any References to Alleged Spoliation;"[10] and Lincare's "Motion in Limine on General Matters."[11] After considering the motion, record, and relevant authorities, the Court **GRANTS**

---

[1] Dkt. No. 21.
[2] Defendant Medical Depot, Inc. d/b/a Drive Devilbiss Healthcare notes it is incorrectly named as "Medical Depot, Inc. d/b/a Drive Devilbiss Healthcare, Inc." Dkt. No. 1-4 p. 21 (First Amended Original Answer).
[3] Dkt. No. 23.
[4] Dkt. No. 25.
[5] Dkt. No. 28.
[6] Dkt. No. 22.
[7] Dkt. No. 24.
[8] Dkt. No. 26.
[9] Dkt. No. 31.
[10] Dkt. No. 29.
[11] Dkt. No. 30.

Lincare's motion to supplement, **GRANTS** Defendants' motions for summary judgment, and **DENIES AS MOOT** the remaining motions.

## I. BACKGROUND

Plaintiff brings this action for an allegedly defective rental wheelchair. Plaintiff is a disabled individual who has been confined to a wheelchair since undergoing multiple hip and spine surgeries. On January 19, 2016, Lincare, a company that "whether by rental or sale"[12] "supplies durable medical equipment . . . [including] wheelchairs to patients from whom doctors order their use for the patient's needs,"[13] delivered to Plaintiff's home a non-motorized wheelchair.[14] Upon delivery, Plaintiff received an operating manual and signed a Manual Wheelchair Orientation checklist.[15] Plaintiff claims the Lincare delivery representative then represented to Plaintiff that the wheelchair had a 300-pound weight capacity.[16]

In October 2016, Plaintiff claims he repositioned himself about once every hour to relieve pressure on an ulcer sore,[17] but that his "pressing down the armrests to pull himself up from the wheelchair to adjust his position was never excessive."[18] On October 29, 2016, while repositioning himself, Plaintiff "fell from [the subject] wheelchair and broke his femur after the wheelchair's [left] armrest broke."[19] Plaintiff claims he weighed 160 pounds at the time.[20]

---

[12] Dkt. No. 33 p. 6.
[13] *Id.* at p. 5.
[14] Dkt. No. 22-1 p. 31. Before Lincare's delivery of the wheelchair at issue, Plaintiff used a wheelchair borrowed from his former rehabilitation facility. While the issues with the "first" wheelchair are noted in Plaintiff's deposition, the "first" wheelchair is not at issue in this case. Thus, any further reference to the wheelchair at issue is in reference to what Plaintiff considers his "second" wheelchair. The Court notes Plaintiff also mentions other wheelchairs either observed, gifted, or delivered, but such are not the basis of this case.
[15] Dkt. No. 33 p. 6; Dkt. No. 22-1 p. 62 (signed Checklist).
[16] Dkt. No. 22-1 p. 21 (Martinez Dep. 79:6–13).
[17] *Id.* at p. 50 (Martinez Dep. 196:9–18).
[18] Dkt. No. 24 p. 26, ¶ 8.
[19] Dkt. No. 1-4 p. 7, ¶ 12; Dkt. No. 33 p. 4, ¶ 5.
[20] Dkt. No. 22-1 p. 21 (Martinez Dep. 79:14–15).

As a result of the fall, Plaintiff underwent reparative surgery on his femur on or about November 1, 2016.[21] Three days later, Plaintiff alleges Lincare "picked up the defective wheelchair (Serial Number: 4515[1]0291[0]60 – Model Drive Cruiser X4) and delivered a new wheelchair (Serial Number: 451608220926) for Plaintiff to use."[22] As addressed below, the parties dispute any issues with the wheelchair's armrest at or after delivery and whether Plaintiff contacted Lincare about any issues with the wheelchair before the subject incident. The subject wheelchair has apparently since been lost.[23] However, Plaintiff and Plaintiff's counsel's brother, Plaintiff's original counsel,[24] may still have possession of some parts.[25]

Plaintiff filed his original petition in state court on September 17, 2018,[26] bringing claims against Defendants for manufacturing and design defects; marketing defects; negligence; breach of express and implied warranties of merchantability; and breach of implied warranty of fitness for a particular purpose.[27] Medical Depot, the alleged manufacturer but admitted seller[28] of the subject wheelchair to Lincare,[29] received service of process on October 8, 2018;[30] filed an answer in state court on October 29, 2018;[31] and removed to this Court on November 6, 2018, on

---

[21] Dkt. No. 1-4 p. 7, ¶ 13.

[22] *Id.* at pp. 7–8, ¶ 13. The Court notes Plaintiff's signed Manual Wheelchair Orientation Checklist provided at delivery lists the Manufacturer as "Drive," Model CX418ADDASF, and Serial/LECS as #451510291060. Dkt. No. 31-3 p. 7. It is unclear if "Drive" is referring to Medical Depot or "Model Drive Cruiser X4." However, Plaintiff never raises this issue.

[23] Dkt. No. 22-1 pp. 24–25 (Martinez Dep. 89–95).

[24] Dkt. No. 33 p. 6, ¶ 6.

[25] Plaintiff's wife allegedly collected some pieces after Plaintiff's incident. Dkt. No. 22-1 p. 15 (Martinez Dep. 53:8–25–55:1–6) & p. 45 (Martinez Dep. 173:10–25). Plaintiff apparently brought a piece to his deposition, where Defendants first learned Plaintiff still had parts from the wheelchair. Dkt. No. 22-1 pp. 14–15 (Martinez Dep. 50–56); Dkt. No. 22-1 pp. 24–25 (Martinez Dep. 89–95) (Plaintiffs' counsel discussing whether Plaintiff, Plaintiff's counsel's brother, or Defendants should have possession or access to the part).

[26] Dkt. No. 4 (State case summary sheet).

[27] Dkt. No. 1-4 pp. 8–15.

[28] Dkt. No. 33 p. 6, ¶ 1 ("Plaintiff's and Defendant [Medical Depot]'s Admissions: 1. [Medical Depot] sold the subject wheelchair to [Lincare]").

[29] Medical Depot states it sells "durable medical products . . . to retailers, like [Lincare] in this case." Dkt. No. 33 p. 3.

[30] Dkt. Nos. 1-4, 4, 10.

[31] Dkt. Nos. 1-4, 4.

the basis of diversity jurisdiction.[32] Lincare received service of process on October 9, 2018,[33] and filed an answer in this Court on November 8, 2018.[34]

On December 4, 2018, the Court issued a case-specific scheduling order in accordance with Rule 26 guidelines and the parties' requests in their joint discovery/case management plan.[35] The Court set a deadline for Plaintiff to designate expert witnesses and reports by June 1, 2019; Defendants to designate expert witnesses and reports by July 1, 2019; and the parties to complete discovery by September 27, 2019.[36]

Despite the six-month period between the Court's scheduling order and Plaintiff's first deadline, Plaintiff failed to meet its deadline to designate expert witnesses and reports. Defendants met their deadlines to designate expert witnesses and reports.[37] Two months after failing to timely designate expert witnesses, Plaintiff filed a motion for leave to designate late expert witnesses "who can testify and opine for the medical treatments that [Plaintiff] received as a result of this accident."[38] The Court denied the motion, noting Plaintiff failed to identify an expert on damages and liability, among other deficiencies.[39]

Thereafter, Medical Depot filed the instant motion for summary judgment.[40] Medical Depot maintains it purchased the wheelchair from an unnamed third-party manufacturer; contests Plaintiff's contention that Medical Depot designed and manufactured the wheelchair; and argues it is an "innocent seller" under the Texas Products Liability Act.[41] Plaintiff responded,[42] and

---

[32] Dkt. No. 1.
[33] Dkt. No. 10 pp. 9–11.
[34] Dkt. No. 3.
[35] Dkt. No. 9.
[36] *Id.*
[37] Dkt. Nos. 11–12.
[38] Dkt. No. 15 p. 2, ¶ 7.
[39] Dkt. No. 20.
[40] Dkt. No. 21; Dkt. No. 33 p. 3 ("Statement of the Case" in the parties' Joint Pretrial Order).
[41] Dkt. No. 21; Dkt. No. 33 p. 3 ("Statement of the Case" in the parties' Joint Pretrial Order).
[42] Dkt. No. 23.

Medical Depot replied and objected to Plaintiff's summary judgment evidence.[43] Lincare also filed the instant motion for summary judgment, acknowledging that it delivered the wheelchair to Plaintiff and arguing it is an "innocent seller" under the Texas Products Liability Act.[44] Plaintiff responded,[45] Lincare replied,[46] and Plaintiff filed a surreply.[47] Lincare later filed the instant unopposed motion to supplement its motion for summary judgment to include exhibits referenced in an attached affidavit.[48] The parties have filed their Court-ordered joint pretrial order.[49]

Two days before the originally scheduled December 20, 2019 final pretrial conference, Plaintiff requested a six-month continuance and extension of the September 27, 2019 discovery deadline.[50] The Court denied such request, pointing out Plaintiff's counsel's "apparent disregard for his client's and opposing counsel's time and the Court's judicial resources" and "multiple opportunities . . . to remedy his manifest failure to timely recognize his case management deficiencies."[51] The Court nonetheless continued the final pretrial conference to January 21, 2020, and ordered Plaintiff's counsel to appear for a show cause hearing on January 21, 2020.[52]

The motions are now ripe for review. The Court begins with Lincare's motion to supplement then turns to Defendants' motions for summary judgment.

---

[43] Dkt. No. 25.
[44] Dkt. No. 22; Dkt. No. 33 p. 3.
[45] Dkt. No. 24.
[46] Dkt. No. 26.
[47] Dkt. No. 28.
[48] Dkt. No. 31.
[49] The parties filed duplicate proposed joint pretrial orders, simply renaming the attached exhibits to reflect their contents instead of numbered exhibits. Dkt. Nos. 32–33. Accordingly, the Court considers the most recently filed proposed joint pretrial order. Dkt. No. 33.
[50] Dkt. No. 35.
[51] Dkt. No. 37 p. 5.
[52] *Id.*

## II. Motion to Supplement

Lincare requests to supplement its provided affidavit of Ricardo Benavides, Exhibit B attached to its motion for summary judgment, because one of the exhibits referenced in the affidavit was "erroneously not attached [] at the time of filing."[53] Lincare states, "[t]his filing will complete the Exhibit B . . . [t]hese documents are known to the parties as they were the subject of testimony and examination at Plaintiff's deposition."[54] The Court notes the requested supplemental exhibits are already provided in the record. Nevertheless, considering the parties' lack of opposition, the Court **GRANTS** Lincare's motion. The Court turns to the motions for summary judgment.

## III. Motions for Summary Judgment

### A. Legal Standard

The Court notes Medical Depot's motion for "no evidence" summary judgment is only available in Texas state court and not federal court.[55] The Court thus applies the relevant federal summary judgment standard. Under Federal Rule of Civil Procedure ("Rule") 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[56] "A fact is 'material' if its resolution could affect the outcome of the action,"[57] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[58] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

---

[53] Dkt. No. 31 p. 1, ¶ 2.
[54] *Id.* ¶¶ 4–5.
[55] *Allen v. Fusion Autoplex LLC*, 2017 WL 1215431, at *3 (S.D. Tex. March 31, 2017) (citing *Bank of America, N.A. v. Fulcrum Enterprises, LLC*, 20 F.Supp.3d 594, 602 (S.D. Tex. May 19, 2014)); Tex. R. Civ. P. 166a.
[56] Fed. R. Civ. P. 56(a).
[57] *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007) (internal quotation marks and citation omitted).
[58] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citation omitted).

judgment."[59] "Although this is an exacting standard, summary judgment is appropriate where the only issue before the court is a pure question of law."[60] As to the question of law, because federal jurisdiction is invoked on the basis of diversity of citizenship,[61] this Court, *Erie*-bound, must adhere to grounds of relief authorized by the state law of Texas.[62] Absent a decision by Texas's highest tribunal, the decisions by Texas courts of appeals control "unless [the Court] is convinced by other persuasive data that the highest court of the state would decide otherwise."[63]

The movant bears the initial burden of showing the absence of a genuine issue of material fact,[64] but is freed from this initial burden on matters for which the non-movant would bear the burden of proof at trial; in that event, the movant's burden is reduced to merely pointing to the absence of evidence.[65] If the movant meets its initial burden, the non-movant must then demonstrate the existence of a genuine issue of material fact.[66] This demonstration must specifically indicate facts and their significance,[67] and cannot consist solely of "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."[68]

In conducting its analysis, the Court may consider evidence from the entire record, viewing that evidence in the light most favorable to the non-movant.[69] Rather than combing through the record on its own, however, the Court looks to the motions for summary judgment

---

[59] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[60] *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991).

[61] *See* Dkt. No. 1 p. 2.

[62] *See Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 396 (5th Cir. 2013); *Exxon Co. U.S.A, Div. of Exxon Corp. v. Banque De Paris Et Des Pays-Bas*, 889 F.2d 674, 675 (5th Cir. 1989); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[63] *Exxon Co. U.S.A., Div. of Exxon Corp.*, 889 F.2d at 675 (quoting *West v. AT&T*, 311 U.S. 223, 237 (1940)).

[64] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[65] *See id.* at 323–25; *see also Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995).

[66] *See Celotex Corp.*, 477 U.S. at 323.

[67] *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[68] *U.S. ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 337 (5th Cir. 2008) (citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).

[69] *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (citations omitted).

and responses to present the evidence for consideration.[70] Parties may cite to any part of the record, or bring evidence in the motions and responses.[71] By either method, parties need not proffer evidence in a form admissible at trial,[72] but must proffer evidence substantively admissible at trial.[73]

### B. Analysis

As a threshold matter, the Court notes the parties generally characterize this case as a "products liability" case. Despite Plaintiff including negligence and breach of warranties claims in his complaint. In the parties' proposed joint pretrial order, Lincare contests "[w]hether Plaintiff can maintain an action for common law negligence and breach of warranty separate and apart from a claim as defined under the [Texas Products Liability Act] against Lincare."[74] Plaintiff does not argue distinct theories of negligence or breach of warranties, but rather, addresses his claim only as a products liability action. Accordingly, considering Plaintiff is the master of his action, the Court finds Plaintiff's claims for manufacturing and design defects; marketing defects; negligence; and breach of warranties fundamentally arise out of personal injuries caused by the alleged defective wheelchair and sound in products liability only, as described below.

Importantly, the parties do not dispute Chapter 82 of the Texas Civil Practice and Remedies Code ("Texas Products Liability Act" or "TPLA") governs this action.[75] Defendants

---

[70] *See* Fed. R. Civ. P. 56(e).

[71] *See* Fed. R. Civ. P. 56(c).

[72] *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").

[73] *See Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) ("[T]he evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial.").

[74] Dkt. No. 32 p. 10.

[75] *Howard v. Lowe's Home Centers, LLC*, 306 F. Supp. 3d 951, 956 (W.D. Tex. 2018), *reconsideration denied*, No. 1:16-CV-1279-RP, 2018 WL 6431015 (W.D. Tex. July 5, 2018), *aff'd sub nom. Howard v. Lowe's Home Centers, L.L.C.*, 765 F. App'x 76 (5th Cir. 2019) ("[W]hether Section 82.003 applies to a particular claim depends not on whether the plaintiff labeled it as a products-liability claim, but rather on whether liability arises out of personal

individually argue they are "innocent sellers" not liable under a theory of products liability because none of the TPLA's relevant exceptions apply.[76] The parties also disagree over the requirement of expert testimony in this case, considering Plaintiff failed to designate any experts. Thus, the Court must resolve whether Plaintiff presents evidence sufficient to (1) establish whether Defendants can be held liable under the TPLA; and (2) proceed with his products liability claims without expert testimony.

### a. Defendants' Liability Under the TPLA

Texas defines a "products liability action" as:

> [A]ny action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.[77]

The TPLA defines a "seller" as "a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof."[78] A "manufacturer" under the TPLA is "a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce."[79] "[A]ll manufacturers are also sellers, but not all sellers are manufacturers."[80]

---

injuries or property damage caused by a defective product. *See Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999) ("Liability for personal injuries caused by a product's defective design can be imposed under several legal theories, among them negligence, breach of warranty, and strict products liability.")).

[76] Dkt. No. 21 (Medical Depot's motion for summary judgment); Dkt. No. 22 (Lincare's motion for summary judgment).

[77] Tex. Civ. Prac. & Rem. Code Ann. § 82.001(2) (West).

[78] *Id.* § 82.001(3) (West).

[79] *Id.* § 82.001(4) (West).

[80] *SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 449 (Tex. 2008) (quoting *General Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 256 (Tex. 2006)); *Gen. Motors Corp.*, 199 S.W.3d at 256 ("With one exception, nothing in the statute precludes one person from being both with respect to the same product

"The common law has long taught that a manufacturer has no 'duty to warn or instruct about another manufacturer's products, though those products might be used in connection with the manufacturer's own products.'"[81] Traditionally, products liability law provides that "the plaintiff must prove the defendant supplied the product that caused the injury. It is not enough that the seller introduced products of similar design and manufacture into the stream of commerce."[82] Under Texas law, an "innocent seller" is a nonmanufacturing seller of a product who "is not liable for harm caused to the claimant by that product unless the claimant proves" one of the following seven exceptions:

(1) that the seller participated in the design of the product;

(2) that the seller altered or modified the product and the claimant's harm resulted from that alteration or modification;

(3) that the seller installed the product, or had the product installed, on another product and the claimant's harm resulted from the product's installation onto the assembled product;

(4) that:

    (A) the seller exercised substantial control over the content of a warning or instruction that accompanied the product;

    (B) the warning or instruction was inadequate; and

    (C) the claimant's harm resulted from the inadequacy of the warning or instruction;

(5) that:

    (A) the seller made an express factual representation about an aspect of the product;

    (B) the representation was incorrect;

    (C) the claimant relied on the representation in obtaining or using the product; and

    (D) if the aspect of the product had been as represented, the claimant would not have been harmed by the product or would not have suffered the same degree of harm;

(6) that:

    (A) the seller actually knew of a defect to the product at the time the seller supplied the product; and

---

or its components. The exception is in section 82.002(d), which states: For purposes of this section, a wholesale distributor or retail seller who completely or partially assembles a product in accordance with the manufacturer's instructions shall be considered a seller.").

[81] *Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986, 997, 203 L. Ed. 2d 373 (2019) (Gorsuch, J., dissenting) (quoting *Firestone Steel Prod. Co. v. Barajas*, 927 S.W.2d 608, 616 (Tex. 1996)).

[82] *Firestone Steel Prod. Co.*, 927 S.W.2d at 614 (citations omitted).

(B) the claimant's harm resulted from the defect; or
(7) that the manufacturer of the product is:
    (A) insolvent; or
    (B) not subject to the jurisdiction of the court.[83]

Accordingly, if Plaintiff proves that any one of the seven exceptions individually applies to Defendants, that Defendant may be held liable under the TPLA and cannot avail itself of the "innocent seller" defense. The Court now discusses each Defendants' liability.

### i. Medical Depot's Liability

Plaintiff alleges Medical Depot "manufactured, sold, distributed, and/or delivered . . . designed, [], tested, warranted . . . and [] engaged in the business of designing, manufacturing, testing, assembling, engineering, constructing, building, inspecting, marketing, advertising, modifying, altering, rebuilding, selling, leasing, and/or distributing and placing into the stream of commerce certain products, specifically [Plaintiff's wheelchair] for sale to members of the general public."[84] Plaintiff further alleges Medical Depot "knew the subject wheelchair had various defects, specifically defective armrest, with respect to its safety, and was not suitable for any use, thereby posing a serious threat of injury or death to its consumers, including Plaintiff."[85] Medical Depot argues it "sold the Wheelchair to Defendant Lincare, Inc. at some point but did not manufacture the Wheelchair . . . there is no evidence that Medical Depot designed, manufactured, altered or made an incorrect misrepresentation about the Wheelchair."[86] Medical Depot further argues it "cannot be held liable under a theory of products liability because Plaintiff has not presented any evidence that his claim falls under one of the seven exceptions

---

[83] Tex. Civ. Prac. & Rem. Code Ann. § 82.003(a)(1)–(7) (West); *Stephenson v. Caterpillar Inc.*, No. 216CV00071JRGRSP, 2019 WL 498337, at *8 (E.D. Tex. Feb. 8, 2019) (quoting *Garcia v. LG Electronics USA Inc.*, 2011 WL 2517141, at *2 (S.D. Tex. June 23, 2011)) ("Texas law 'provides blanket protection for nonmanufacturing sellers of products from liability for injuries caused by a defective product unless one of the specified exceptions [under Section 82.003] appl[ies].").
[84] Dkt. No. 1-4 pp. 7–8, ¶¶ 12, 14, 17.
[85] *Id.* at p. 8, ¶ 18.
[86] Dkt. No. 21 p. 2, ¶ 3.

under Tex. Civ. Prac. & Rem Code § 82.003."[87] Medical Depot notes it "could not identify the wheelchair in question because it was no longer available for inspection, but it would have been manufactured by one of two manual assist wheelchair suppliers for [Medical Depot]."[88]

In support, Medical Depot provides (1) "Plaintiff's Response to Defendant[s'] Request for Disclosure;"[89] and (2) Medical Depot's own objections and answers to Plaintiff's First Set of Interrogatories.[90] Plaintiff neither raises any argument in his reply and surreply nor attempts to provide any evidence challenging Medical Depot's arguments or evidence.[91] "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."[92] The Court has no duty "to sift through the record in search of evidence to support a party's opposition to summary judgment."[93] Nevertheless, the Court notes Medical Depot's own answers to Plaintiff's First Set of Interrogatories do not ordinarily constitute competent summary judgment evidence because such are hearsay when offered by Medical Depot.[94] However, Plaintiff has not objected. Thus, the Court may consider Medical Depot's proffered evidence.[95]

---

[87] *Id.* ¶ 5.

[88] Dkt. No. 21 pp. 13–14, ¶ 33; Dkt. No. 33 p. 5, ¶ 3.

[89] Dkt. No. 21-1. The Court notes this document is addressed to both Defendants, despite Plaintiff's apparent clerical error stating he "serves his response to Defendant Desiree Marie Aguilar's, Request for Disclosure. . . ." There is no defendant named Desiree Marie Aguilar in this case.

[90] Dkt. No. 21-2.

[91] Dkt. No. 23 (Plaintiff's Response to Medical Depot's Motion for Summary Judgment); Dkt. No.27 (Plaintiff's Surreply). Plaintiff focuses solely on responding to Medical Depot's argument regarding the necessity of expert testimony in this case.

[92] *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)).

[93] *Id.* (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir. 1992), *cert. denied*, 506 U.S. 832 (1992)).

[94] Dkt. No. 21-2. Under Federal Rule of Civil Procedure ("Rule") 56(c), "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents . . . affidavits or declarations . . . admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

[95] Dkt. No. 21-1.

Medical Depot directs the Court to Plaintiff's answers to Medical Depot's Interrogatory No. 16, Request for Production No. 19, and Request for Disclosure under Rule 194.2(c).[96] Through Interrogatory No. 16, Medical Depot requests Plaintiff "state any and all facts which support or relate to [Plaintiff's] contention that 'at the time, Defendants sold the subject wheelchair to a Hidalgo County resident, Defendants knew the subject wheelchair had various defects, specifically defective armrest, with respect to its safety, and was not suitable for any use, thereby posing a serious threat of injury or death to its consumers, including Plaintiff." Plaintiff answers, "Plaintiff never thought he was going to fall. He trusted the company making them to keep him safe, but in the end the company failed him because of how cheaply they were made."[97] When asked by Medical Depot in its Request for Production No. 19 to "produce any and all documents which support or relate" to the same abovementioned contention, Plaintiff answers "None."[98] Finally, Plaintiff answers Medical Depot's request for Plaintiff's "legal theories and, in general, the factual bases [for Plaintiff's] claims or defenses" with "Plaintiff believes that the wheelchairs are made cheaply and not put together well."[99] The record does not reflect Plaintiff supplemented his answers. On this evidence, Plaintiff fails to show how Medical Depot may be liable under a TPLA exception.

As exemplified above, Plaintiff recognizes his lack of evidence proving Medical Depot meets any of the seven exceptions under Tex. Civ. Prac. & Rem Code § 82.003 to hold Medical Depot liable for his harm caused by the alleged defective product in this case. Plaintiff makes no effort to identify Medical Depot as "the company making [the subject wheelchair]" or present related evidence sufficient to meet his burden on any of the available exceptions. Plaintiff fails to

---

[96] Dkt. No. 21 p. 14, ¶ 35; Dkt. No. 21-1 pp. 3, 10, 16.
[97] Dkt. No. 21-1 p. 10, ¶ 16.
[98] *Id.* at p. 16, ¶ 19.
[99] *Id.* at p. 3.

articulate any attempt to obtain clarification of Medical Depot's involvement with the subject wheelchair or the identities of potential third-party suppliers as raised by Medical Depot. Absent any evidence from Plaintiff that Medical Depot falls under any of the seven exceptions, the Court finds Plaintiff fails to raise a genuine issue of material fact that could preclude summary judgment in favor of Medical Depot on this ground.[100] Thus, the Court **GRANTS** Medical Depot's motion. The Court turns to the issue of Lincare's liability.

### ii. Lincare's Liability

Plaintiff makes the same allegations against Lincare as he does against Medical Depot.[101] Both Plaintiff and Lincare agree that Lincare is a "seller" as defined by the TPLA,[102] but Lincare presents arguments as to why it does not fall under any of the seven exceptions under the TPLA.[103] Plaintiff's response fails to directly address any of Lincare's "innocent seller" arguments or argue any particular exceptions apply. Rather, citing his own deposition, Plaintiff primarily focuses on the expert testimony issue. Regardless, the Court briefly addresses each of the TPLA's exceptions and evaluates whether Plaintiff raises a genuine issue of material fact as to any of the seven exceptions.

As to the first and second exception, Lincare argues it "did not manufacture or design the wheelchair at issue or any of its accessory parts nor did it alter or modify the wheelchair or any

---

[100] *See SSP Partners*, 275 S.W.3d at 458 (where the Texas Supreme Court held a plaintiff's evidence sufficient to raise an issue of fact precluding summary judgment for a defendant arguing there was no evidence the defendant sold the actual lighter that caused the fire at issue where such evidence showed defendant imported the specific kind of lighter used and plaintiff knew of no one else who imported the specific kind of lighter); *Romo v. Ford Motor Co.*, 798 F. Supp. 2d 798 (S.D. Tex. 2011) (where store that sold an allegedly defective tire could not be held liable because plaintiff failed to present evidence showing the store had any connection to that tire).

[101] Dkt. No. 1-4.

[102] Lincare states "the wheelchair was rented by [Plaintiff's] insurer for his use, and that renters of products are treated as sellers for these purposes." Dkt. No. 22 p. 8, ¶ C (citing *Drake v. Penske Truck Leasing Co., LP*, No. 4:12-CV-264, 2013 WL 1313697, at *1 (E.D. Tex. Feb. 21, 2013), *report and recommendation adopted*, No. 4:12-CV-264, 2013 WL 1313568 (E.D. Tex. Mar. 28, 2013); *Gonzales v. Robles & Sons, Inc.*, No. SA-14-CA-733-OLG, 2015 WL 11573773, at *1 (W.D. Tex. July 29, 2015)).

[103] Dkt. No. 22.

of its accessory parts."[104] Plaintiff fails to provide any argument or evidence to the contrary, and in turn, fails to establish the application of these exceptions.

For the third exception, which concerns the product's "installation" by Lincare and Plaintiff's resulting harm from such installation, Lincare argues "[t]he wheelchair required no assembly and was not 'installed' as part of any other pieces of equipment."[105] In support, Lincare points to the affidavit of Ricardo Benavides ("Mr. Benavides"), Lincare's area manager for south Texas branch offices, and Plaintiff's own deposition.[106] Mr. Benavides states:

> Records kept by Lincare show that employee Eugene Velasquez delivered the wheelchair. He delivered the wheelchair and completed the delivery paperwork associated with the delivery on January 19, 2016 . . . Lincare did not add to, modify, or remove any parts from the wheelchair before delivery to Plaintiff, and it is the policy and procedure of the company that no such modifications of any kind are made to equipment rented or sold to customers or patients . . . Wheelchairs may be provided with accessory parts, for example – foot rests, that come from a manufacturer, but those parts are not modified in any way by Lincare personnel.[107]

Lincare points out that Plaintiff "testified the wheelchair was in a box and removed from its box and packaging at delivery."[108] While Plaintiff does not offer a direct response to Lincare's argument, the Court looks to Plaintiff's deposition testimony. When asked whether the wheelchair was [allegedly] "flimsy from the time that . . . [the wheelchair] was originally delivered" and whether Plaintiff had to assemble the wheelchair, Plaintiff simply responded the wheelchair "was in a box . . . The person that came and dropped it off did it for me . . . ."[109] Plaintiff makes no attempt to compare Lincare's delivery of the wheelchair to an "installation" of

---

[104] *Id.* at pp. 9–10, ¶ 1.
[105] *Id.* at p. 10, ¶ 2.
[106] *Id.*
[107] Dkt. No. 22-2 p. 2, ¶¶ 6, 11–12.
[108] Dkt. No. 22 p. 10, ¶ 2; Dkt. No. 22-1 p. 27 (Martinez Dep. 101:18–22; 102:8–12) ("Q: Okay. Did the Lincare representative who dropped this off, did he remove all the packaging, the box that you said it was in? A: Yeah, he took it out of the plastic and everything. . . . Q: Did – did you get in the wheelchair at the time of delivery? A: No, because I was in my bedroom. And then he took it out of the box.").
[109] Dkt. No. 22-1 p. 4 (Martinez Dep. 9:6–13).

the wheelchair or an "installation" of the alleged defective part of the wheelchair, the armrest. Plaintiff further fails to show a genuine issue of material fact as to Lincare installing the armrest or the wheelchair because Plaintiff presents no evidence of Lincare installing the armrest onto the wheelchair or substantively assembling the wheelchair. Even if such argument survived, Plaintiff fails to show a genuine issue of material fact exists as to the "installation" causing Plaintiff's harm. Accordingly, no material factual dispute exists as to the application of the third exception.

Lincare argues Plaintiff cannot establish causation under the fourth and fifth exceptions where Plaintiff "cannot prove that any warning or representation caused his injury as he admittedly failed to read any instructions or warnings regarding the wheelchair at issue and admits that Lincare provided him no verbal instruction regarding the wheelchair at issue."[110] Through his response and deposition testimony, Plaintiff presents some argument for the Court's review. Because these exceptions are distinct, the Court discusses them separately.

For Plaintiff to survive summary judgment against Lincare under the fourth exception, Plaintiff must prove that "[Lincare] exercised substantial control over the content of a warning or instruction that accompanied the product; the warning or instruction was inadequate; and [Plaintiff's] harm resulted from the inadequacy of the warning or instruction."[111] In his affidavit, Mr. Benavides states:

> Lincare representatives do not provide advice or guidance from a biomechanical viewpoint on a customer/patient's safest or best method for wheelchair transfer considering their medical or physical limitations and that such instructions would be provided by a customer's doctor, health care provider or person providing the order for the equipment. Rather, any instructions provided or discussed with customers regard only the equipment and are in conformity with information provided by the manufacturer of the equipment at issue.[112]

---

[110] Dkt. No. 22 p. 10, ¶ 3.
[111] Tex. Civ. Prac. & Rem. Code Ann. § 82.003(a)(4) (West).
[112] Dkt. No. 22-2 p. 3, ¶ 17.

Plaintiff has not directed the Court to any evidence to the contrary. Accordingly, there is no genuine issue of material fact that Lincare does not exercise substantial control over the content of accompanying wheelchair instructions provided to Plaintiff.

Even if Lincare exercised substantial control over such content, Plaintiff fails to prove how "the warning or instruction was inadequate." On the date of delivery, Plaintiff signed Lincare's "Manual Wheelchair Orientation Checklist," affirming in relevant part: (1) under the "General" section, Plaintiff "ha[d] the current manufacturer's operating manual for the Drive wheelchair and is advised to read it thoroughly;"[113] under the "Safety" section, Lincare "[e]xplain[ed] all warnings in the manufacturer's operation instructions;" under the "Operating the Wheelchair" section, Lincare "[e]xplain[ed] the parts of the wheelchair and the function of each;" and under the "Routine Maintenance by Customer" section, Lincare "[i]nstruct[ed] [Plaintiff] to periodically check the wheelchair for loose parts. Advise local center if problem arises."[114] Yet, Plaintiff argues "the wheelchair lacked adequate instructions or warnings in regard to the safety of the armrests, and the omission of the instructions or warnings rendered the wheelchair not reasonably safe;"[115] Plaintiff "did not receive any instructions or warnings from [Lincare] in terms of pressing down the armrests to pull himself up to reposition or stand up;"[116] and Lincare "never instructed or warned in regard to Plaintiff's usage of the armrests to reposition his body."[117] Confusingly, Lincare characterizes Plaintiff as a "'sophisticated' user of wheelchairs at the time of Lincare's delivery [who] did not need [the Lincare delivery

---

[113] Dkt. No. 31-1 p. 7.
[114] *Id.*
[115] Dkt. No. 24 p. 5, ¶ 2.
[116] *Id.* at p. 13, ¶ 4.
[117] Dkt. No. 24 p. 20, ¶ 7.

representative] to instruct [Plaintiff] on anything"[118] and Plaintiff's deposition testimony as "admit[ting] that Lincare provided [Plaintiff] no verbal instruction regarding the wheelchair at issue."[119] Nevertheless, Plaintiff does not provide evidence that would suggest or create a genuine issue of material fact as to Lincare's instructions, written or oral, being inadequate, especially where Plaintiff instead presents evidence he ignored any provided instructions:

> Q: Did – so when the [] wheelchair came . . . you're saying [Lincare] didn't give you any paperwork to keep, and you didn't have any questions for how this wheelchair may operate differently than the first one. Is that right?
> A: [Lincare] probably did, but you know, they don't – I don't – I don't sit there, bother reading agreements. Got in the wheelchair and just sit there or wheel yourself around, whatever you're going to do in the house.
> Q: You don't know if you got some paperwork from –
> A: . . . [Lincare] probably gave it to me, but since I already had [the wheelchair], why – as far as reading the manual on it.
> Q: If you – if you got paperwork, did you – did you just set it aside and not look at it?
> A: Or my – my wife did.
> Q: Okay. So if you got any paperwork, is it fair to say that you didn't look at it because you thought you already knew what you needed to know about operating a wheelchair?
> A: Yes.[120]

Plaintiff further fails to offer any evidence that his harm resulted from the inadequacy of the instruction. Plaintiff has made clear his deliberate disregard for any provided instructive materials and his self-proclaimed experience with wheelchairs. Yet, Plaintiff argues "[i]f Plaintiff was given a proper instruction or warning in regard to pressing down the armrests of the wheelchair to reposition his body, this falling accident would not have occurred."[121] Plaintiff provides no evidence that a failure to instruct or an inadequate instruction on armrest use caused his harm here. Accordingly, the fourth exception does not apply.

---

[118] Dkt. No. 33 p. 6.
[119] Dkt. No. 22 p. 10, ¶ 3.
[120] Dkt. No. 22-1 p. 21 (Martinez Dep. 77:9–18; 78: 6–17).
[121] Dkt. No. 24 pp. 30–31, ¶ 9.

For the fifth exception, which concerns an express factual representation about an aspect of the product, the Court first looks to the nature of Plaintiff's relationship with Lincare. As noted above by Mr. Benavides, Lincare becomes involved with customers like Plaintiff after "the customer's doctor, health care provider or person providing the order for the equipment"[122] contacts Lincare. Plaintiff confirms communicating at some point with his insurance company who set up the wheelchair order.[123] Thus, by some combination of doctor recommendation and insurance approval, Plaintiff received the subject wheelchair. Plaintiff does not present evidence that this process requires Plaintiff to rely on any representation made by Lincare regarding an aspect of the subject wheelchair. Plaintiff also presents no evidence that Lincare's delivery included any express factual representations regarding an aspect of the wheelchair enough for Plaintiff to have relied on the representation.

Nevertheless, Plaintiff claims "the employee of Lincare represented to Plaintiff that the wheelchair could handle a person whose weight is 300 pounds."[124] Plaintiff argues he "had no reason to think that the armrest will break when he pushes the armrest to pull up his body to reposition himself."[125] Still, Plaintiff's alleged weight of 160 pounds and testimony of how the armrest "broke off" does not create a genuine issue of material fact regarding whether the 300-pound weight capacity representation was incorrect or whether such representation extended to the weight capacity of the armrest, an aspect of the wheelchair.

The Court also agrees with Lincare that Plaintiff fails to prove the causation requirement for the fifth TPLA exception, that "if the aspect of the product had been as represented, [Plaintiff] would not have been harmed by the product or would not have suffered the same

---

[122] Dkt. No. 22-2 p. 3, ¶ 17.
[123] Dkt. No. 22-1 p. 5 (Martinez Dep. 13–16).
[124] Dkt. No. 24 pp. 11, 19.
[125] *Id.* at p. 20, ¶ 7.

degree of harm." Plaintiff only presents unfounded causation theories that "improper construction or defective materials caused this falling accident;"[126] "the armrest broke not due to heavy usage, but due to manufacturing, designing, and marketing defect, because it suddenly broke off;"[127] and "[a]lternative materials such as metals, stronger plastics, or carbon pieces to the armrests on the wheelchair in question could have prevented it from breaking off which ultimately caused Plaintiff to fall and break his femur."[128] None of this relates to Lincare's representation. Even where Plaintiff speculates the wheelchair "couldn't handle my weight, or I don't know,"[129] Plaintiff concedes "the people who study that and manufacture those are in a better position to understand that."[130] Plaintiff's speculation is not proof of how a wheelchair or armrest with a 300-pound weight capacity would have prevented Plaintiff's harm. The Court finds the fifth exception does not apply.

As to the sixth exception, requiring proof that Lincare actually knew of a defect to the product at the time the seller supplied the product and Plaintiff's harm resulted from the defect, Lincare's evidence shows it "has no record of prior complaints or problems with [the subject] wheelchair, identified on delivery and pick-up paperwork as Serial Number 4S1510291060."[131] Lincare also argues Plaintiff "cannot show that Lincare actually knew of any defect in the wheelchair."[132] Lincare's evidence further shows that, "when asked about what issue the

---

[126] Dkt. No. 24 p. 13, ¶ 4.
[127] *Id.* at p. 22.
[128] *Id.* at p. 30.
[129] Dkt. No. 22-1 p. 42 (Martinez Dep. 162:10–17).
[130] *Id.* at p. 56 (Martinez Dep. 219:5–22).
[131] Dkt. No. 22 p. 13, ¶ 4; Dkt. No. 22-2 p. 2, ¶¶ 8–9 (Mr. Benavides' affidavit) ("A review of branch records indicate that there were no complaints or requests for a change of wheelchair by Plaintiff or anyone acting on his behalf before it was picked up [] on November 4, 2016, from the time of its delivery on January 19, 2016. If there had been prior complaints or a separate request for a different wheelchair, it would have been noted in [Plaintiff's] file records. Lincare has no record of prior complaints or problems with this wheelchair, identified on delivery and pick-up paperwork as Serial number 4S1510291060.")
[132] Dkt. No. 22 p. 13, ¶ 4.

wheelchair displayed, [Plaintiff] said it was 'flimsy' but not at the time of delivery."[133] Lincare points out the wheelchair "remained in [Plaintiff's] sole possession until the accident occurred, having been removed in front of [Plaintiff] from its packaging."[134]

Plaintiff provides no evidence Lincare actually knew of the alleged defect at the time of delivery. Plaintiff alleges that "[p]rior to his fall from the wheelchair on October 29, 2016,"[135] he called Lincare about the defect, but was "[n]ot even sure of the date" and that no one got back with him.[136] Clearly, the only allegation of Plaintiff's communication to Lincare about the alleged defect does not take place at the time of delivery and does not even prove Lincare knew of the defect. Accordingly, the sixth exception does not apply.

Finally, the seventh exception provides for liability against an "innocent seller" where a manufacturer is insolvent or not subject to the Court's jurisdiction, Lincare states, "[n]o such information has ever been pled, much less is available."[137] As noted above, it is undisputed that Plaintiff has not identified the appropriate manufacturer sufficient to establish liability. It is further undisputed Lincare is not the manufacturer of the subject wheelchair. In turn, Plaintiff has failed to establish any insolvency or jurisdictional status of the relevant wheelchair manufacturer. The seventh exception thus does not apply here.

Therefore, the Court finds Lincare is a nonmanufacturing seller for the purposes of TPLA and there is no genuine issue of material fact as to the application of any of the abovementioned exceptions. The Court **GRANTS** Lincare's motion for summary judgment on this ground.

### b. Plaintiff's Lack of Expert Testimony

---

[133] *Id.*; Dkt. No. 22-1 p. 4 (Martinez Dep. 9:2–8).
[134] *Id.*
[135] Dkt. No. 24 p. 6.
[136] Dkt. No. 22-1 p. 11 (Martinez Dep. 39:5–11).
[137] Dkt. No. 22 p. 14, ¶ 5.

The above analysis renders summary judgment proper. Yet, alternatively, the Court briefly addresses the lack of expert testimony in light of the parties collectively providing more briefing on the issue. "[P]roduct liability cases are quintessentially expert cases."[138] As noted above, Plaintiff failed to designate an expert in this case. Without question, Plaintiff's products liability claims require proof of causation.[139]

"Whether expert testimony is necessary to prove a matter or theory is a question of law."[140] "Under Texas law, 'expert testimony is generally encouraged if not required to establish a products liability claim.'"[141] The Supreme Court of Texas has "consistently required expert testimony and objective proof to support a jury finding that a product defect caused the plaintiff's condition."[142] Specifically, "[e]xpert testimony is required when an issue involves matters beyond jurors' common understanding."[143] "Proof other than expert testimony will support a jury finding only when the jurors' common understanding and experience will allow

---

[138] *Emery v. Medtronic, Inc.*, No. 19-20389, 2019 WL 6705285, at *2 (5th Cir. Dec. 9, 2019).

[139] The elements of Plaintiff's claims are as follows. "Under Texas law, in order to recover for an injury on the theory of products liability, the plaintiff bears the burden of proving that (1) the defendant placed a product into the stream of commerce; (2) the product was in a defective or unreasonably dangerous condition; and (3) there was a causal connection between that condition and the plaintiff's injuries or damages." *Smith v. Robin Am., Inc.*, 484 F. App'x 908, 912 (5th Cir. 2012) (citation omitted). Plaintiff's manufacturing defect claim requires Plaintiff prove "the product was defective when it left the hands of the manufacturer and that the defect was a producing cause of the plaintiff's injuries." *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 352 (Tex. 2015) (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). "To be successful on a manufacturing defect claim, the plaintiff must identify a specific defect by competent evidence and rule out other possible causes of the damage." *Id.* (citing *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004)). A Texas design defect claim requires Plaintiff to prove "(1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Emery*, No. 19-20389, 2019 WL 6705285, at *2 (quoting *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1040 (5th Cir. 2011)). "Producing cause" means "(1) the cause must be a substantial cause of the event in issue and (2) it must be a but-for cause, namely one without which the event would not have occurred." *Id.* (citing *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007)). "A marketing defect is proven even when the evidence shows that a defendant fails to warn of a product's potential dangers, when warnings are required, and that the lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous." *Smith*, 484 F. App'x at 912.

[140] *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006) (citing *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 89 (Tex. 2004)).

[141] *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 409 (5th Cir. 2016) (quoting *Ledesma*, 242 S.W.3d at 42).

[142] *Gharda*, 464 S.W.3d at 348 (collecting cases).

[143] *Id.* (quoting *Mack Trucks*, 206 S.W.3d at 583).

them to make that finding with reasonable probability."[144] "[When] the causal link is beyond the jury's common understanding, expert testimony is necessary."[145] "Lay testimony may be used as evidence of causation in certain circumstances, but "[w]hen expert testimony is required, lay evidence supporting liability is legally insufficient."[146] "[F]or expert testimony not to be required in a products liability case, 'the product itself, or at least the . . . feature in question, must be relatively uncomplicated, and the implications . . . such that a layman could readily grasp them.'"[147]

Defendants separately argue, "[e]xpert testimony is required where the causal connection between an alleged defect and the claimant's injuries is beyond the jury's common understanding . . . the connection between the alleged defect and [Plaintiff's] injuries is beyond the jury's common understanding."[148] Medical Depot argues, "there has been no showing, and there will be no showing, that Plaintiff can offer these opinions under Fed. R. Evid. 701 or 702. There are a number of explanations for the wheelchair arm breaking as alleged by Plaintiff, including but not limited to, the Plaintiff doing something to cause it to break. Expert testimony is clearly required to prove a products liability claim, particularly one that involves a durable medical product."[149] Lincare continues, "[Plaintiff] cannot proffer lay witness testimony in place of expert testimony for evidence . . . Without expert testimony, [Plaintiff] cannot show evidence of the wheelchair's alleged defect, an element essential to his claims, and with no evidence of a

---

[144] *Id.* (citing *Mack Trucks*, 206 S.W.3d at 583).
[145] *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 120 (Tex. 2004).
[146] *Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 812 (Tex. 2005)).
[147] *Stewart v. Capital Safety USA*, 867 F.3d 517, 521 (5th Cir. 2017).
[148] Dkt. No. 21 p 6, ¶ 16; Dkt. No. 22 pp. 5–6, ¶ 1.
[149] Dkt. No. 25 p. 3. Lincare adopts this argument. Dkt. No. 26.

defect, [Plaintiff] cannot establish a causal connection between the defect and his alleged damages."[150]

Plaintiff first attempts to differentiate his case from those cited by Defendants[151] because "the cases that [Defendants] cites primarily are cases involving a manufacturing defect, rather than a design defect,"[152] thereby failing to realize Plaintiff pleads a manufacturing defect in this case. Without citing to any supporting cases, Plaintiff further argues his "testimony supports his position that an expert testimony is not necessary in this particular case because the defect and the causation in the present case do not involve the complexity that requires expert testimony to help [the] jury to understand the issues. Even without [] expert testimony, Plaintiff can prove his case . . . [t]he testimony of Plaintiff and Plaintiff's treating physicians are sufficient to raise a fact issue which should be presented to a jury."[153] Plaintiff then presents to the Court the following causation theories: (1) "if Defendant added [a] seatbelt to the wheelchair or used other alternative materials for the armrest, this falling accident could have been prevented;"[154] (2) "the armrest broke not due to heavy usage, but due to manufacturing, designing, and marketing defect, because it suddenly broke off;"[155] (3) "[Plaintiff] believes that the cause of the falling incident was that the armrest of the wheelchair could not handle his weight;"[156] (4) "[p]ressing down the armrests to pull himself up from the wheelchair to adjust his position . . . was not the cause or contributing factor in the falling incident;"[157] and (5) "[a]lternative bolt and nut mechanism

---

[150] Dkt. No. 22 p. 6, ¶ 1; p. 8, ¶ 2.
[151] Both Defendants cite to *Alexander v. Turtur & Associates, Inc.*, a Texas Supreme Court legal malpractice case holding a jury was not competent to determine causation for negligence or DTPA claims without expert guidance. 146 S.W.3d 113.
[152] Dkt. Nos. 23 & 24 p. 4, ¶ 1.
[153] Dkt. No. 23 pp. 2, 5.
[154] *Id.* at p. 20, ¶ 7.
[155] *Id.* at p. 23.
[156] *Id.*
[157] Dkt. No. 23 p. 27.

could have prevented the falling accident."[158] The Court finds expert testimony is required in this case.

The Court is unaware of a products liability case involving an allegedly defective wheelchair able to proceed without expert testimony as to the alleged defect. Rather, courts in this Circuit have evaluated the need and relevancy of wheelchair experts in similar circumstances with heightened scrutiny. In *Dorsey v. Relf*, the plaintiff, a wheelchair user for 35 years, failed to designate an expert who could provide testimony "concerning the degree of care which a physical therapist of ordinary prudence and skill would have exercised in the same or similar circumstances, whether [plaintiff's physical therapist] breached that standard of care, and whether any such breach was a proximate cause of plaintiff's injury."[159] The *Dorsey* court opined "the need to provide instructions and warnings to a wheelchair user" is not a matter of common knowledge, as a "wheelchair is a medical device."[160]

In *McSwain v. Sunrise Med., Inc.*, where wheelchair anti-tip tubes were at issue, the Court held the designated expert, a mechanical engineer, was qualified to "test the angle at which the wheelchair can be tipped back before tipping over, and to explain how different factors, such as the thickness of the seat cushion, the wheelbase measurement of the front and back tires, and whether the tires are hard or soft plastics, affects the center of gravity, the stability of the chair, and the propensity to tip."[161] However, the Court reserved the right to limit the expert's testimony at trial to matters that met his qualifications "as a mechanical engineer and [were] outside the scope of the average juror's experience and knowledge" because the expert's "lack of experience and knowledge of wheelchair use [was] troubling . . . [the expert] conclude[d] that

---

[158] Dkt. No. 24 p. 31.
[159] *Dorsey v. Relf*, No. 4:12-CV-021-A, 2013 WL 791604, at *4 (N.D. Tex. Mar. 4, 2013), *aff'd*, 559 F. App'x 401 (5th Cir. 2014).
[160] *Id.*
[161] *McSwain v. Sunrise Med., Inc.*, No. 2:08-CV-136KS-MTP, 2010 WL 200004, at *4 (S.D. Miss. Jan. 14, 2010).

anti-tip tubes should be standard, but [had] no knowledge of the benefits of wheelchairs without anti-tip tubes and [the expert] relie[d] on his own hypothesis, without the benefit of any experience or education in wheelchair use or training, that the vast majority of wheelchair users cannot do a wheelie at will."[162]

Further, in *Gibson v. Invacare Corp.*, an expert with qualifying engineering credentials who examined the alleged defective hemi-walker compared it with identical models and produced detailed findings was qualified to testify.[163] Even when the alleged defective wheelchair is unavailable for an expert's examination, an expert with qualifying engineering credentials may provide testimony where "calculations are based on a reliable formula and [the expert's] assumptions are based on direct evidence in the record."[164] Finally, the Fifth Circuit has held, in the context of a products liability case involving a child's car seat, expert testimony as to armrest detachment is relevant and requires a reliable foundation.[165]

Based on the aforementioned, the Court finds the alleged defect and the causal link to Plaintiff's injuries is beyond jurors' common understanding. Plaintiff fails to cite to any relevant cases supporting his argument that his own testimony would suffice to establish causation. Plaintiff's own unfounded theories or reliance on alleged broken parts in his possession or indistinct photographs will not suffice. Plaintiff further fails to present evidence that could serve

---

[162] *Id.*
[163] *Gibson v. Invacare Corp.*, No. 4:09-CV-00182-CWR, 2011 WL 2262933, at *4 (S.D. Miss. June 7, 2011) ("Rather, Dr. Clarke closely examined Gibson's failed hemi-walker and two otherwise identical Model 6252 hemi-walkers, and his report contains detailed findings. Perhaps Invacare's arguments will sully Dr. Clarke's veracity with the jury at trial, but they are not enough to establish, for Rule 702 purposes, that his conclusions rest on mere speculation.").
[164] *Edwards v. Permobil, Inc.*, No. CV 11-1900, 2013 WL 12230885, at *3 (E.D. La. Aug. 9, 2013).
[165] *McCune v. Graco Children's Prod., Inc.*, 495 F. App'x 535, 540 (5th Cir. 2012).

to supplement his lack of expert testimony,[166] even where the wheelchair is unavailable for review.

Notably, the alleged defect and the causal link to Plaintiff's injuries appears to be beyond *Plaintiff's* common understanding. Plaintiff provides no evidence a layman could readily grasp the alleged defective feature in question and no indication he personally grasps the actual product and alleged defect.[167] First, it is unclear how often or thoroughly Plaintiff evaluated the wheelchair:

> Q: [W]hen the wheelchair gets dropped off to – to you – you understand that no one from Lincare is watching how you're using it or knowing how you're using it every day right?
> A: Right.
> Q: And you understood that once it was in your possession you had to continue to monitor its condition, correct?
> A: Of course.
> Q: So that means you're going to visually look at the wheelchair, right?
> A: I just sit on it. I mean, there's no way to physically look at it.[168]

Although Plaintiff speculates one of the parts gathered by his wife after the fall was "supposedly used to adjust height of armrests,"[169] he acknowledges this part had nothing to do with his accident.[170] Plaintiff's deposition testimony also reveals that Plaintiff did not read the wheelchair's instructions and Plaintiff inconsistently describes the armrest and wheelchair as "broken," "loose," or "flimsy."[171] Accordingly, Plaintiff has not shown an understanding of the

---

[166] *See Kleppel v. Hunter's Mfg. Co., Inc.*, No. 4:16-CV-03715, 2018 WL 6436269, at *9–10 (S.D. Tex. Dec. 7, 2018), *reconsideration denied*, No. 4:16-CV-03715, 2019 WL 1438324 (S.D. Tex. Apr. 1, 2019) ("While it is true that Kleppel has not presented a study, data, or expert testimony to show that a [patented] Guard [to a particular crossbow] would have prevented or significantly reduced the risk of her injury, Kleppel has produced evidence that the Guard is designed precisely to prevent or significantly reduce the risk of her type of injury . . . Despite Kleppel's failure to produce expert testimony, the Court finds that the evidence discussed above is sufficient to create a triable question of fact regarding whether a safer alternative design for the TL-4 [crossbow] existed in 2006.").

[167] *Stewart v. Capital Safety USA*, 867 F.3d 517, 521 (5th Cir. 2017).

[168] Dkt. No. 22-1 p. 29 (Martinez Dep. 111:20–25; 112:1–7).

[169] Dkt. No. 24 p. 15, ¶ 5; Dkt. No. 22-1 p. 15 (Martinez Dep. 55–56).

[170] Dkt. No. 22-1 p. 45 (Martinez Dep. 174:1–25–175:1–19).

[171] Dkt. No. 33; Dkt. No. 22-1 p. 14 (Martinez Dep. 50:11–21) (where Plaintiff states, "I didn't even know it was broken, to tell you the truth," and when looking at the part he brought to the deposition, stating "I knew it was kind of loose."); Dkt. No. 22-1 p. 29 (Martinez Dep. 112:14–25) (where Plaintiff states the armrest "wasn't loose or

cause, much less that the causal link is within his or the jury's common understanding. Thus, Plaintiff provides no evidence he would be qualified to testify as to the defect.

"Texas courts have repeatedly held that the mere fact that an accident occurred is not sufficient proof [of a defect]."[172] Plaintiff's conclusory representations, speculations, and emotions, namely that the wheelchair was "flimsy," and Plaintiff felt "insecure" in the wheelchair, do not constitute any evidence. Even if the Court permitted the testimony of Plaintiff's physicians, Plaintiff presents no information as to what Plaintiff's physicians would testify. Plaintiff offers nothing to show that his physicians can testify as to liability.

Accordingly, Plaintiff's failure to provide any expert testimony also warrants summary judgment. The Court alternatively **GRANTS** Defendants' motions for summary judgment on this basis. As no other claims or issues remain, the Court need not address the other pending motions.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Lincare's "Unopposed Motion to Supplement Summary Judgment Evidence."[173] The Court also **GRANTS** Medical Depot's "No Evidence Motion for Summary Judgment"[174] and Lincare's "Motion for Summary Judgment,"[175] thereby **DISMISSING WITH PREJUDICE** Plaintiff's claims against Defendants. The Court thus **DENIES AS MOOT** Lincare's "Motion in Limine to Exclude Any References to Alleged

---

nothing . . . the wheelchair is flimsy."); *Id.* at p. 41 (Martinez Dep. 160:21–24) (where Plaintiff states he had no issue with the left armrest before the date of the accident); *Id.* at p. 11 (Martinez Dep. 39:5–11) (where Plaintiff explains on an unknown date he told an unnamed girl the "wheelchair doesn't feel right to me," the girl allegedly said "Well, I'll have Mr. Rodriguez call you back," and [Lincare employee] did not get back with Plaintiff).
[172] *Giovanni v. New Balance Athletics, Inc.*, No. 4:17-CV-3598, 2019 WL 1556470, at *2 (S.D. Tex. Feb. 25, 2019) (quoting *Romo*, 798 F. Supp. 2d at 809).
[173] Dkt. No. 31.
[174] Dkt. No. 21.
[175] Dkt. No. 22.

Spoliation"[176] and Lincare's "Motion in Limine on General Matters."[177] A final judgment will issue separately.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 17th day of January, 2020.

_____
Micaela Alvarez
United States District Judge

---

[176] Dkt. No. 29.
[177] Dkt. No. 30.